IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 3:2006-37 |
| | ) | |
| DANIYEL DIYN, | ) | JUDGE GIBSON |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

The Government has filed a "Motion of the United States for Reconsideration" (Document No. 79) which seeks reconsideration by the Court of footnote four of its Memorandum Opinion and Order of Court (Document 70) wherein this Court voiced its determination regarding the transcribed testimony of Trooper Bard in which he testified that he told the Defendant he was under arrest. The Government submits that Trooper Bard misspoke and that it is responsible for not correcting his statement during its examination of Trooper Bard. The Court understands the Government's motion as a request to essentially reverse our determination with respect to what Trooper Bard said and find that this statement is unworthy of credit and that his subsequent statements to the effect that the Defendant was free to leave as being worthy of credit.

The Court is the judge of credibility of testimony given in pretrial evidentiary hearings, *see United States v. Richardson*, 501 F.Supp.2d 724, 734 (W.D.Pa. 2007). The footnote in question reads as follows:

> The Court is aware that subsequent testimony of Bard indicates that he said to
> the Defendant that he was not under arrest. The Court reviewed the court reporter's

1

notes and her audio recording of the proceeding and the record reveals that Bard's statement that the Defendant was under arrest was correctly transcribed. The Court has not credited the statements of Bard and Taylor made to the Defendant that he could leave and therefore, they are excluded from the findings of fact.

*United States v. Diyn*, 2008 WL 2795942 at *2, 2008 U.S. Dist. LEXIS 54910 at *9 (W.D.Pa. July 18, 2008). The transcript was already determined to be an accurate and complete transcription of the words spoken by Trooper Bard at the time of his testimony.[1]

In context, Trooper Bard's testimony presented a contradiction within itself. Although Trooper Bard may have misspoke, the transcript reflects the following testimony:

```
Q. What happened next?

A. We got out of our car and we started walking in that
general direction. And I asked, Mr. Diyn -- I yelled out Mr.
Diyn. And at that point in time Mr. Diyn looked at me and
started walking towards myself and Trooper Taylor.

Q. Did you speak with Mr. Diyn at that time?

A. I identified myself, said I am Trooper Bard from the
state police. I identified myself and showed him my badge. I
have a search warrant for your residence. I identified
everybody else in the group with me. He asked what the search
```

---

[1] The Court had already recognized in footnote four of the its Memorandum Opinion and Order of Court (Document 70) that the Official Court Reporter properly transcribed the testimony of Trooper Bard. Had the Official Court Reporter (or for that matter a member of the Court) concluded that the transcript should be amended because a witness misspoke, amendment of the transcript by the Official Court Reporter for that purpose is not permitted. The Guide to Judiciary Policies and Procedures, Volume VI, Part 18.10.1.b reads:

18.10.1.b Editing of Speech. The transcript should provide an accurate record of words spoken in the course of proceedings. All grammatical errors, changes of thought, contractions, misstatements, and poorly constructed sentences should be transcribed as spoken. (See Exhibit 18.9-B, line 8.) In the interest of readability, however, false starts, stutters, uhms and ahs, and other verbal tics are not normally included in transcripts; but such verbalizations must be transcribed whenever their exclusion could change a statement's meaning.

2

warrant was about. At that point I stated we're here for child pornography. I said, are you sadiansaint, and he said yes. And I said, is there child pornography in the house. And he said yes there will be.

Q. And where exactly did that conversation take place?

A. We were actually in a, right beside a very small alley, street, outside in the parking lot.

Q. And you said you asked a question about are you sadiansaint. What was the relevance to that question in your investigation?

A. Because the Yahoo profile that contained the child pornography images was given the name sadiansaint.

Q. And he did confirm that that was him?

A. Yes he did.

Q. And you also said that he confirmed that there would be child pornography inside the residence?

A. Yes he did.

Q. After that conversation what did you do next?

A. At that point I stated, I told him he was under arrest. That we were going to go into the residence. We were going to give him an opportunity to open the door but if he refused we were still going to execute the search warrant. He said, he would be glad to open the door. And I said, well, for my safety I'm just going to pat you down, make sure you have no weapons on you. He complied. I said, is there anything in the house that we need to know about before we enter the house.

Transcript (Document No. 64), pp. 31-32.

The Court does not disagree that Trooper Bard subsequently testified that he told the Defendant he was free to leave and that he was not under arrest. However, the Court was presented with a conflict

3

that it had to resolve in order to properly address facts potentially critical to the operation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In view of the content of the transcript, the Court's ruling that it accepted as accurate that Trooper Bard told the Defendant he was under arrest will stand.

The Court's basis for this conclusion is that the Defendant admitted to Trooper Bard in front of three other law enforcement officers that he committed a crime. The fact that Trooper Bard testified that his response was "I told him he was under arrest" is perfectly consistent with the Defendant's admission of guilt. Furthermore, Trooper Bard patted him down before proceeding to the search of the Defendant's home. This testimony of his own actions is consistent with an admission of guilt of the Defendant and an indication by the arresting officer that the Defendant was to be taken into custody.

However, in light of the Government's objection, the Court will order that footnote four of the Court's Memorandum Opinion be amended to reads as follows:

> The Court is aware that subsequent testimony of Bard indicates that he said to the Defendant that he was not under arrest. The Court reviewed the court reporter's notes and her audio recording of the proceeding and the record reveals that Bard's statement that the Defendant was under arrest was correctly transcribed. The Court accepts as accurate Trooper Bard's statement that the Defendant was under arrest.

Nevertheless, the Defendant's Motion to Suppress (Document No. 43) remains denied.

4

AND NOW this 28th day of August, 2008, IT IS HEREBY ORDERED THAT the "Motion of the United States for Reconsideration" (Document No. 79) is DENIED; IT IS FURTHER ORDERED THAT footnote four of the Court's Memorandum Opinion and Order of Court at Document Number 70 is amended to read as follows:

> The Court is aware that subsequent testimony of Bard indicates that he said to the Defendant that he was not under arrest. The Court reviewed the court reporter's notes and her audio recording of the proceeding and the record reveals that Bard's statement that the Defendant was under arrest was correctly transcribed. The Court accepts as accurate Trooper Bard's statement that the Defendant was under arrest.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE